ORAL ARGUMENT NOT YET SCHEDULED

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| ENVIRONMENTAL DEFENSE FUND, ENVIRONMENTAL INTEGRITY PROJECT, NATURAL RESOURCES DEFENSE COUNCIL, and SIERRA CLUB,<br><br>*Petitioners*,<br><br>v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY and LEE ZELDIN, in his capacity as Administrator of the U.S. Environmental Protection Agency,<br><br>*Respondents*. | Case No. 25-1176 |

**FILING OF UNDERLYING AGENCY DECISION**

Petitioners Environmental Defense Fund, Environmental Integrity Project, Natural Resources Defense Council, and Sierra Club submit the attached copy of the underlying agency decision, a final action of the United States Environmental Protection Agency titled "Prevention of Significant Deterioration (PSD) and Nonattainment Review (NNSR): Regulations Related to Project Emissions Accounting;

1

Withdrawal of Proposed Rule," and published at 90 Fed. Reg. 34,206 (July 21, 2025) (attached).

Respectfully submitted,

*/s/Sanjay Narayan*
Sanjay Narayan
Sierra Club Environmental Law Program
2101 Webster St., Ste. 1300
Oakland, CA 94612
(415) 977-5769
sanjay.narayan@sierraclub.org

*Counsel for Sierra Club*

Keri N. Powell
Southern Environmental Law Center
10 10th Street NW, Suite 1050
Atlanta, GA 30309
(917) 573-8853
kpowell@selc.org

*Counsel for Environmental Integrity Project and Sierra Club*

Vickie L. Patton
Surbhi Sarang
Environmental Defense Fund
2060 Broadway, Ste. 300
Boulder, CO 80302
(303) 447-7214
vpatton@edf.org
ssarang@edf.org

*Counsel for Environmental Defense Fund*

John Walke
Emily Davis
Natural Resources Defense Council
1152 15th St., NW, Ste. 300
Washington, D.C. 20005
(202) 289-6868
jwalke@nrdc.org
edavis@nrdc.org

*Counsel for Natural Resources Defense Council*

Dated: September 15, 2025

2

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of September, 2025, the foregoing Filing of Underlying Agency Decision has been served on all registered counsel through the Court's electronic filing system.

    Respectfully submitted,

    */s/Sanjay Narayan*
    Sanjay Narayan

# ATTACHMENT

*Electronic Access to This Document:* The official version of this document is the document published in the **Federal Register**. You may access the official edition of the **Federal Register** and the Code of Federal Regulations at *www.govinfo.gov.* You may also access documents of the Department published in the **Federal Register** by using the article search feature at *www.federalregister.gov.*

**Signing Authority**

This document of the U.S. Department of Education was signed on July 17, 2025, by Linda McMahon, Secretary of Education. That document with the original signature and date is maintained by the U.S. Department of Education. For administrative purposes only, and in compliance with requirements of the Office of the Federal Register, the undersigned has been authorized to sign the document in electronic format for publication, as an official document of the U.S. Department of Education. This administrative process in no way alters the legal effect of this document upon publication in the **Federal Register**.

Tracey St. Pierre,
*Director, Office of the Executive Secretariat, Office of the Secretary, U.S. Department of Education.*

[FR Doc. 2025–13650 Filed 7–18–25; 8:45 am]
**BILLING CODE 4000–01–P**

# ENVIRONMENTAL PROTECTION AGENCY

**40 CFR Parts 51 and 52**

[EPA–HQ–OAR–2022–0381; FRL–9249–03–OAR]

**RIN 2060–AV62**

**Prevention of Significant Deterioration (PSD) and Nonattainment New Source Review (NNSR): Regulations Related To Project Emissions Accounting; Withdrawal of Proposed Rule**

**AGENCY:** Environmental Protection Agency (EPA).
**ACTION:** Proposed rule; withdrawal.

**SUMMARY:** The U.S. Environmental Protection Agency (EPA) is withdrawing the proposed rule titled "Prevention of Significant Deterioration (PSD) and Nonattainment New Source Review (NNSR): Regulations Related to Project Emissions Accounting" that published in the **Federal Register** on May 3, 2024. Based on comments received, the EPA has determined that there is insufficient justification for the proposed rule revisions to the New Source Review (NSR) program applicability provisions under the Clean Air Act (CAA) and that the proposed revisions could result in unnecessary additional burden on regulated entities and State, Tribal, and local air agencies that implement the NSR regulations.

**DATES:** As of July 21, 2025, the proposed rule published on May 3, 2024, at 89 FR 36870, is withdrawn.

**ADDRESSES:** The EPA has established a docket for the Project Emissions Accounting rulemaking under Docket ID No. EPA–HQ–OAR–2022–0381. All documents in the docket are listed on the *https://www.regulations.gov* website. Although listed in the index, some information is not publicly available, *e.g.,* Confidential Business Information or other information whose disclosure is restricted by statute. Certain other material, such as copyrighted material, is not placed on the internet and will be publicly available only in hard copy form. Publicly available docket materials are available electronically through *https://www.regulations.gov.*

**FOR FURTHER INFORMATION CONTACT:** Ms. Jessica Montanez, Air Quality Policy Division, Office of Air Quality Planning and Standards (C504–03), Environmental Protection Agency, Post Office Box 12055, Research Triangle Park, NC 27711; telephone number: (919) 541–3407; email address: *montanez.jessica@epa.gov.*

**SUPPLEMENTARY INFORMATION:** As established under CAA, the NSR program is a preconstruction permitting program that requires certain stationary sources of air pollution to obtain permits prior to beginning construction. The NSR permitting program applies to both new construction and to modifications of existing sources, regardless of whether the source is in an area where the national ambient air quality standards (NAAQS) have been exceeded (nonattainment area) or if the source is in an area where the NAAQS have not been exceeded (attainment or unclassifiable area). NSR permits for major sources that are located in attainment or unclassifiable areas are referred to as Prevention of Significant Deterioration (PSD) permits. NSR permits for major sources located in nonattainment areas and that emit pollutants above the specified thresholds for which the area is in nonattainment are referred to as Nonattainment NSR (NNSR) permits. An existing major stationary source triggers major NSR permitting requirements when it undergoes a "major modification." The EPA's implementing regulations for NSR establish a two-step process for determining major NSR applicability for projects at stationary sources. To be subject to major NSR requirements, the project must result in both (1) a significant emissions increase from the project (the determination of which is called "Step 1" of the NSR applicability analysis); and (2) a significant net emissions increase at the stationary source, taking account of emission increases and emission decreases attributable to other projects undertaken at the stationary source within a specific time frame (called "Step 2" of the NSR applicability analysis, or "contemporaneous netting"). Thus, a project is a major modification for a regulated NSR pollutant if it results in both a significant emissions increase and a significant net emissions increase for that pollutant across the stationary source.

On November 24, 2020, the EPA published a final rule titled "Prevention of Significant Deterioration (PSD) and Nonattainment New Source Review (NNSR): Project Emissions Accounting" (85 FR 74890) ("Project Emissions Accounting rule"). The Project Emissions Accounting rule made clarifying revisions to the applicability procedures in the EPA's NSR regulations that are used to determine whether a physical change or change in the method of operation (*i.e.,* a "project") at an existing major stationary source will result in a significant emissions increase under Step 1 of the NSR applicability process. Specifically, the revisions made clear that both increases and decreases resulting from a project shall be accounted for under Step 1 of the NSR applicability process, consistent with an earlier EPA memorandum that interpreted the pre-existing regulations to allow for the same approach (termed "project emissions accounting").[1] The EPA determined that a full accounting of emissions changes resulting from a project is more consistent with the definition of "modification" at CAA section 111(a)(4) because it ensures that projects that result in an overall decrease in emissions or in a *de minimis* increase in emissions will not be subject to the major NSR program.

The EPA received a petition for reconsideration on the Project Emissions Accounting rule dated

---

[1] Memorandum from E. Scott Pruitt, to Regional Administrators, "Project Emissions Accounting Under the New Source Review Preconstruction Permitting Program," March 13, 2018. Available at: *https://www.epa.gov/sites/production/files/2018-03/documents/nsr_memo_03-13-2018.pdf.*

January 22, 2021 ("2021 petition"),[2] which the EPA denied on the grounds that the petition did not meet the CAA section 307(d)(7)(b) criteria for mandatory reconsideration. However, the EPA decided to undertake a discretionary rulemaking in response to the 2021 petition. As a result, the EPA issued a proposed rule that was published in the **Federal Register** on May 3, 2024.[3] The proposed rule included a potential revision to the definition of "project" in the NSR regulations, additional recordkeeping and reporting requirements applicable to minor modifications at existing major stationary sources, and a potential requirement that decreases accounted for under the Step 1 significant emissions increase calculation be enforceable. The EPA provided a 60-day public comment period on the proposed rule that closed on July 2, 2024.

Based on a careful review of the proposed rule and comments received during the public notice period, the EPA has determined that the proposed rule did not provide sufficient justification of the benefits of the proposed revisions to the NSR regulations, and that the proposed revisions could result in additional burdens on regulated entities and State, Tribal, and local air agencies that implement the NSR regulations, which are not necessary to achieve the intended result. These burdens could disincentivize or delay environmentally and economically beneficial projects at stationary sources, including efficiency improvements.

The stated goal of the proposed rule was to improve implementation and strengthen enforceability of the NSR program provisions finalized in the 2020 Project Emissions Accounting rule. However, based on feedback the EPA received during the public comment process, the EPA agrees with several commenters that the changes the EPA proposed would impose additional burdens and uncertainty on regulated stationary sources without clear and justifiable corresponding benefits.

For the proposed definition of "project," the Agency proposed to codify in the NSR regulations the EPA's interpretation and policy for determining whether changes at a facility should be grouped together or separated, as articulated in EPA's 2018 final action on "project aggregation."[4] The EPA explained in the proposal that this change was intended to provide greater clarity as to the types of activities to be included in a single project and to address concerns of over- or under-aggregation in determining the scope of a project. However, after considering comments, the EPA agrees with State and industry commenters that the proposed definition of "project" could in fact lead to more uncertainty in permitting decisions rather than improve clarity and that there is insufficient evidence to show that aggregation concerns warrant making these changes to the NSR program. The EPA agrees with these commenters that this proposed definition could increase uncertainty by requiring State, Tribal, and local permitting authorities to use as controlling criteria terms like "substantially related," "economic viability," and "technical viability," which were not defined in the proposed rule. Introducing these terms into the definition of "project" without further defining these terms may lead to inconsistent air permitting implementation results if different permitting authorities interpret these terms differently. In addition, the proposed rule did not include sufficient consideration and information on this issue to allow this issue to be fully addressed in public comments and resolved in a final rule.

Regarding aggregation concerns, commenters rightly observed that the EPA has not identified examples of over- or under-aggregation in prior permitting decisions, and that any issues of this nature that do arise can be handled through enforcement of existing NSR regulations. On top of these concerns, the EPA was not able to quantify any benefits from the proposed revisions to the "project" definition. After considering comments on the proposed rule, the EPA has been persuaded by commenters that the 2018 final action on project aggregation provides sufficient guidance on how individual projects should be considered, while maintaining needed flexibility for permitting authorities and regulated sources to consider the particular facts on a case-by-case basis.

The EPA also agrees with similar concerns raised in comments on the proposed clarification of monitoring, recordkeeping and reporting requirements. The commenters noted that these proposed revisions to the monitoring, recordkeeping and reporting requirements could unnecessarily burden the permitting process and associated obligations without corresponding benefits. In the proposal, the EPA noted that the changes to monitoring, recordkeeping and reporting requirements were intended to clarify and strengthen existing requirements to provide increased transparency, and that in proposing these changes, the EPA sought to analyze the trade-off between compliance improvement with the burdens of additional data collection. Upon further consideration, the EPA agrees with commenters that the additional data collection burden on regulated entities outweighs theoretical benefits of increased transparency from additional reporting. As commenters correctly noted, the EPA did not provide examples or empirical evidence of insufficient recordkeeping, reporting, or monitoring to support these proposed changes, yet the proposed changes would have required additional, and in some instances redundant, data collection burdens on regulated sources.

Regarding the EPA's proposal to make decreases in emissions accounted for in the Step 1 significant emissions increase calculation enforceable, commenters demonstrated that the rationale for this part of the proposal is inconsistent with the EPA's rationale (reflected in prior NSR rulemakings) for other provisions in the EPA's NSR regulations, and that implementation of this part of the proposal would restrict source operation for projects that involve projected decreases in emissions. In a 2002 final rule that reformed the major NSR program applicability provisions, the EPA determined that projected actual emissions should not be made enforceable through a permitting action, finding that doing so "may place an unmanageable resource burden on reviewing authorities" and that "the Act provides ample authority to enforce the major NSR requirements."[5] This same reasoning applies regardless whether a projection results in an increase or decrease in emissions, and the EPA did not receive any comments on the proposal that provided a compelling basis for requiring an enforceable

---

[2] Letter from Sanjay Narayan et al., to Acting Administrator Jane Nishida, "Re: Petition for Reconsideration of 'Prevention of Significant Deterioration (PSD) and Nonattainment New Source Review (NNSR): Project Emissions Accounting,' 85 FR 74890 (November 24, 2020), Docket ID No. EPA–HQ–OAR–2018–0048 and for Withdrawal of Guidance Memorandum titled 'Project Emissions Accounting Under the New Source Review Preconstruction Permitting Program' (March 13, 2018) (OAQPS–2020–683 and OAQPS–2020–223)," January 22, 2021, ("Petition for Reconsideration"), available at: *https://www.epa.gov/system/files/documents/2021-10/final-nsr-accounting-rulereconsideration-petition-1_22_21.pdf*.

[3] "Prevention of Significant Deterioration (PSD) and Nonattainment New Source Review (NNSR): Regulations Related to Project Emissions Accounting." 89 FR 36870 (May 3, 2024).

[4] Prevention of Significant Deterioration (PSD) and Nonattainment New Source Review (NNSR); Aggregation; Reconsideration, 83 FR 57324 (November 15, 2018).

[5] 67 FR 80186, at 80204 (December 31, 2002).

limitation in one instance but not the other.

Furthermore, the EPA agrees with commenters that, in some cases, requiring enforcement of a projected decrease in emissions from baseline levels can restrict operating flexibility and future project opportunities. This may be particularly true for projects that improve efficiency, which discourages source owners from pursuing environmentally and economically beneficial projects. Based on the foregoing, the EPA is withdrawing the proposed rule and does not plan to take further action at this time on the project emissions accounting provisions in the NSR regulations.

Lee Zeldin,
*Administrator.*
[FR Doc. 2025–13598 Filed 7–18–25; 8:45 am]
**BILLING CODE 6560–50–P**

---

**OFFICE OF MANAGEMENT AND BUDGET**

**Office of Federal Procurement Policy**

**DEPARTMENT OF DEFENSE**

**GENERAL SERVICES ADMINISTRATION**

**NATIONAL AERONAUTICS AND SPACE ADMINISTRATION**

**48 CFR Parts 11, 12, and 52**

[FAR Case 2025–006, Docket No. FAR–2025–0006, Sequence No. 1]

**RIN 9000–AO79**

**Federal Acquisition Regulation: Ending Procurement and Forced Use of Paper Straws**

**AGENCY:** Office of Federal Procurement Policy (OFPP), Office of Management and Budget; Department of Defense (DoD); General Services Administration (GSA); and National Aeronautics and Space Administration (NASA).

**ACTION:** Proposed rule.

**SUMMARY:** OFPP, DoD, GSA, and NASA, collectively referred to as the Federal Acquisition Regulatory Council (FAR Council), are proposing to amend the Federal Acquisition Regulation (FAR) to ensure agencies procure straws with the strength and durability of plastic in accordance with the National Strategy to End the Use of Paper Straws.

**DATES:** Interested parties should submit written comments to the Regulatory Secretariat Division at the address shown below on or before September 19, 2025, to be considered in the formation of the final rule.

**ADDRESSES:** Submit comments in response to FAR Case 2025–006 to the Federal eRulemaking portal at *https://www.regulations.gov* by searching for ''FAR Case 2025–006''. Select the link ''Comment Now'' that corresponds with ''FAR Case 2025–006''. Follow the instructions provided on the ''Comment Now'' screen. Please include your name, company name (if any), and ''FAR Case 2025–006'' on your attached document. If your comment cannot be submitted using *https://www.regulations.gov,* call or email the points of contact in the **FOR FURTHER INFORMATION CONTACT** section of this document for alternate instructions.

*Instructions:* Please submit comments only and cite ''FAR Case 2025–006'' in all correspondence related to this case. Comments received generally will be posted without change to *https://www.regulations.gov,* including any personal and/or business confidential information provided. Public comments may be submitted as an individual, as an organization, or anonymously (see frequently asked questions at *https://www.regulations.gov/faq*). To confirm receipt of your comment(s), please check *https://www.regulations.gov,* approximately two to three days after submission to verify posting.

**FOR FURTHER INFORMATION CONTACT:** For clarification of content, contact FAR Policy at 202–969–4075 or by email at *FARPolicy@gsa.gov.* For information pertaining to status, publication schedules, or alternate instructions for submitting comments if *https://www.regulations.gov* cannot be used, contact the Regulatory Secretariat Division at 202–501–4755 or *GSARegSec@gsa.gov.* Please cite ''FAR Case 2025–006.''

**SUPPLEMENTARY INFORMATION:**

**I. Background**

On February 10, 2025, the President issued Executive Order (E.O.) 14208, Ending Procurement and Forced Use of Paper Straws. Section 2(c) of the E.O. directed the Assistant to the President for Domestic Policy, in coordination with relevant agencies, to issue a National Strategy to End the Use of Paper Straws (''National Strategy'') that addresses contract policies that ban or penalize plastic straw purchase or use. The National Strategy, issued in March 2025, stated that the FAR Council should amend the FAR to ensure that no Federal agency procures paper straws, consistent with the policy in E.O. 14208. As part of these efforts, the FAR should be updated to include a performance requirement that beverage straws procured and used under Federal contracts have the strength and durability of plastic straws and a provision that requires all Government contractors to represent that they do not use paper straws or penalize the use of plastic straws. The FAR Council is proposing to revise the FAR to align with the National Strategy.

**II. Discussion and Analysis**

The FAR Council is proposing the following amendments to the FAR to implement the National Strategy:

*A. Minimum Performance Requirements*

The proposed rule, if finalized, would amend FAR subpart 11.3, Acceptable Material, to add a minimum Government performance requirement for straws to be procured by agencies or provided for use in agency facilities under Government contracts. The new policy to be added at FAR 11.301(c)(3) would require such straws to have the strength and durability of plastic straws.

*B. Representation*

This proposed rule, if finalized, would also create a new solicitation provision at FAR 52.211–XX, Ending Procurement and Forced Use of Paper Straws, to be included in solicitations for the acquisition of straws or when the resultant contract may require the contractor to provide straws for use at a Federal facility. The new provision requires the offeror to represent that it does not have policies promoting the use of paper straws or penalizing the use of plastic straws, that it will not provide paper straws in performance of the contract, and that any straws provided by the offeror in performance of this contract will have the strength and durability of plastic straws. This provision is proposed to be included in the list of provisions that are applicable to the acquisition of commercial products and commercial services.

*C. Justification*

FAR subpart 23.1, Sustainable Products and Services, provides procedures to ensure agencies procure sustainable products and services to the maximum extent practicable, pursuant to certain statutory purchasing preference programs. One such program is the U.S. Department of Agriculture (USDA) BioPreferred Program. It is a statutory purchasing preference program that establishes minimum biobased content standards for certain products, to include paper straws. Established under the Farm Security and Rural Investment Act of 2002 and implemented through FAR subpart 23.1, the BioPreferred Program promotes the