UNITED STATES COURT OF APPEALS
DISTRICT OF COLUMBIA CIRCUIT

333 Constitution Avenue, NW
Washington, DC 20001-2866
Phone: 202-216-7000 | Facsimile: 202-219-8530

## DOCKETING STATEMENT
*Administrative Agency Review Proceedings (To be completed by appellant/petitioner)*

1. CASE NO. **18-1149 (consolidated)**    2. DATE DOCKETED: 09-15-2025
3. CASE NAME (lead parties only)    **State of New Jersey** v. **US Environmental Protection Agency**
4. TYPE OF CASE: ☒ Review  ☐ Appeal  ☐ Enforcement  ☐ Complaint  ☐ Tax Court
5. IS THIS CASE REQUIRED BY STATUTE TO BE EXPEDITED? ☐ Yes  ☒ No
   If YES, cite statute
6. CASE INFORMATION:
   a. Identify agency whose order is to be reviewed: **US EPA**
   b. Give agency docket or order number(s): **EPA-HQ-OAR-2018-0048**
   c. Give date(s) of order(s) **N/A**
   d. Has a request for rehearing or reconsideration been filed at the agency? ☒ Yes ☐ No
      If so, when was it filled? **01-22-2021**   By whom? **Env. Defense Fund et al.**
      Has the agency acted? ☒ Yes ☐ No   If so, when? **10-18-2021**
   e. Identify the basis of appellant's/petitioner's claim of standing. See D.C. Cir. Rule 15(c)(2):
      See attached statement.

   f. Are any other cases involving the same underlying agency order pending in this Court or any other?
      ☒ Yes ☐ No   If YES, identify case name(s), docket number(s), and court(s)
      **Env. Defense Fund et al. v EPA, No 25-1176 (D.C. Cir)**
   g. Are any other caess, to counsel's knowledge, pending before the agency, this Court, another Circuit Court, or the Supreme Court which involve *substantially the same issues* as the instant case presents?
      ☐ Yes ☒ No   If YES, give case name(s) and number(s) of these cases and identify court/agency:

   h. Have the parties attempted to resolve the issues in this case through arbitration, mediation, or any other alternative for dispute resolution? ☐ Yes ☒ No   If YES, provide program name and participation dates.

Signature _**/s/ Lisa Morelli**_   Date **9/15/25**
Name of Party (Print) **State of New Jersey et al**
Name of Counsel for Appellant/Petitioner (Print) **Lisa J. Morelli**
Address Hughes Justice Complex, 25 Market Street, Trenton, NJ 08625
E-Mail lisa.morelli@law.njoag.gov   Phone ( **609** ) **900-0782**   Fax ( **609** ) **341-5031**

ATTACH A CERTIFICATE OF SERVICE

**Note:** If counsel for any other party believes that the information submitted is inaccurate or incomplete, counsel may so advise the Clerk within 7 calendar days by letter, with copies to all other parties, specifically referring to the challenged statement. An original and three copies of such letter should be submitted.

USCA Form 41
August 2009 (REVISED)

**Attachment to Government Petitioners' Docketing Statement**

**6(e) <u>Basis for Government Petitioners' Standing</u>**

Government Petitioners ask this Court to review a final rule issued by the U.S. Environmental Protection Agency ("EPA") entitled "Prevention of Significant Deterioration (PSD) and Nonattainment New Source Review (NNSR): Project Emissions Accounting," 85 Fed. Reg. 74,890 (Nov. 24, 2020) ("PEA Rule").

In 1977, Congress amended the Clean Air Act (Act) to add the New Source Review (NSR) provisions, subjecting new and modified major stationary air pollution sources, before construction, to permitting and pollution control requirements. One of the critical questions in determining whether NSR applies is whether a proposed construction project – a modification - would result in increased pollution. NSR applicability thus hinges on a pre-construction estimate of the project's effect on emissions. The pre-construction nature of NSR is fundamental to one of the core purposes of the program: preventing air pollution and its harmful effects on human health and the environment.

A complex regulatory scheme has grown since enactment of the NSR provisions. The core of that scheme is the long-standing "two-step process" for determining whether "any physical change" or "change to the method of operation of" a regulated source results in the kind of emissions increase that renders that change a "modification" under the CAA. The PEA Rule changed this two-step construct in fundamental ways, including allowing decreases that result from a modification "project" to be considered at Step 1, and declining to require that such decreases be federally enforceable, as long required for emission decreases considered at Step 2.

The PEA Rule directly regulates New Jersey, since New Jersey is one of a handful of states with delegated authority to issue PSD/NSR permits on behalf of EPA. New Jersey therefore is bound to apply the federal Rule to facilities in New Jersey. 85 Fed. Reg. at 74,904/1 ('the revisions to the regulations at 40 CFR 52.21 adopted in this final rule apply to the EPA and reviewing authorities that have been delegated federal authority from the EPA to issue major NSR permits on behalf of the EPA."). New Jersey, however, lacks the in-state resources to ensure that emission decreases used to offset emission increases that are part of the same "project" actually occur and are real. Similarly, New Jersey lacks the resources to

1

evaluate if activities grouped together as part of a single "project" are in fact appropriately classified as one project.

New Jersey also is harmed in its ability to attain and maintain national ambient air quality standards, known as the NAAQS, due to unlawful emissions from major sources in upwind states. New Jersey is subject to a substantially increased risk of harm from upwind sources, and modeling and monitoring show that cross-state emissions contribute significantly to New Jersey's ozone levels. All of New Jersey is non-attainment with the NAAQS for ozone. The PEA Rule makes NSR enforcement more difficult in upwind states, and inadequate enforcement increases the risk of unlawful cross-state emissions. Such cross-state emissions risk impeding New Jersey's efforts to attain and maintain the NAAQS. EPA itself states there is uncertainty over whether the PEA Rule will increase emissions from construction at stationary sources of air pollution, and that its main goal in the rule was to ensure clarity in the regulatory scheme. Given the cost and delay associated with NSR permitting, including the cost of installing or updating any required pollution control equipment, it is reasonably predicable that major sources of air pollution will use the PEA Rule in ways to maximize the source's chances to not have to undertake any NSR requirements—whether warranted or not. New Jersey has a substantial interest in assuring that its air quality is not adversely affected by upwind sources (and in-state sources) that may violate the NSR provisions of the Clean Air Act.

## Certificate of Service

I certify that on September 15, 2025, I filed the foregoing with the Court's CMS/ECF system, and that, therefore, service was accomplished upon counsel of record by the Court's system.

*/s/ Lisa Morelli*

LISA J. MORELLI
Deputy Attorney General
New Jersey Division of Law
25 Market Street
Trenton, New Jersey 08625
Tel: (609) 900-0782
Email: Lisa.Morelli@law.njoag.gov